Clarissa A. Kang, No. 210660
Angel L. Garrett, No. 255682
Dylan D. Rudolph, No. 278707
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105
Telephone: (415) 788-3111
Facsimile: (415) 421-2017
E-mail: ckang@truckerhuss.com
agarrett@truckerhuss.com
drudolph@truckerhuss.com

Joseph C. Faucher, No. 137353
TRUCKER ✦ HUSS
A Professional Corporation
15821 Ventura Blvd., Suite 510
Los Angeles, CA 91436
Telephone: (213) 537-1016
Facsimile: (213) 537-1020
E-mail: jfaucher@truckerhuss.com

Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; and KAISER PERMANENTE ADMINISTRATIVE COMMITTEE

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STACEY M. MADRIGAL, individually and as representative of a class of participants and beneficiaries and on behalf of the Kaiser Permanente 401K Retirement Plan,

Plaintiffs,

vs.

KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; KAISER PERMANENTE ADMINISTRATIVE COMMITTEE; and DOES 1-10, inclusive

Defendants.

Case No. 2:24-cv-5191 MRA

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; CERTIFICATION OF COMPLIANCE WITH L.R. 11-6.2**

**[Fed. R. Civ. P. 12(b)(6)]**

Date: December 5, 2024
Time: 1:30 p.m.
Courtroom: 10B
Judge: Mónica Ramírez Almadani

Date of First Amended Complaint: July 11, 2024

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 5, 2024, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Mónica Ramírez Almadani, United States District Judge, Central District of California, located at 350 W. First Street, Courtroom 10B, Los Angeles, California 90012, or remote conferencing as directed by the Court, Defendants Kaiser Foundation Health Plan, Inc., Southern California Permanente Medical Group, and the Kaiser Permanente Administrative Committee (collectively, "Defendants") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing the claims for relief asserted against Defendants in Plaintiff Stacy Madrigal's First Amended Class Action Complaint ("FAC"), with prejudice, because the FAC fails to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 28, 2024.

Defendants' Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Clarissa A. Kang and exhibits thereto, all files and records in this action, and on such further evidence and argument as may be offered.

Dated: September 9, 2024

TRUCKER ✦ HUSS

By: *Clarissa A. Kang*
Clarissa A. Kang
Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; and KAISER PERMANENTE ADMINISTRATIVE COMMITTEE

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

## Table of Contents

Page(s)

I. INTRODUCTION ........ 1

II. RELEVANT FACTS ........ 2

A. The Plan. ........ 2

B. Plaintiff's allegations and claims for relief. ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 5

A. Plaintiff has not plausibly alleged that Defendants breached their fiduciary duties. ........ 5

1. Plaintiff's claims are implausible because she seeks an additional benefit not provided under the Plan or ERISA. ........ 6

2. Allocating forfeitures to offset employer contributions is consistent with decades of government regulation. ........ 8

3. KFHP and SCPMG are not fiduciaries with regard to the use of Plan forfeitures. ........ 9

B. ERISA's anti-inurement provision was not violated because no assets inured to the benefit of Defendants. ........ **Error! Bookmark not defined.**

C. Defendants did not cause any transaction that violated ERISA's prohibited transaction rules. ........ 13

D. Failure to monitor claim fails because underlying claims fail. ........ 15

E. There is no right to a jury trial. ........ 15

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
953 F.2d 587 (11th Cir. 1992) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.*,
168 F.3d 671 (3d Cir. 1999) ........ 5

*Black v. Greater Bay Bancorp Exec. Suppl'l Comp. Benefits Plan*,
No. 16-CV-00486-EDL, 2017 WL 8948732 (N.D. Cal. Jan. 18, 2017) ........ 14, 15

*Bracalente v. Cisco Sys., Inc.*,
No. 5:22-CV-04417-EJD, 2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) ........ 15

*Chao v. Hagemeyer N. Am., Inc.*,
No. 2:06-CV-01173-PMD, 2006 WL 8443663 (D.S.C. Oct. 20, 2006) ........ 14, 15

*Conkright v. Frommert*,
559 U.S. 506 (2010) ........ 6, 7

*Coulter v. Morgan Stanley & Co. Inc.*,
753 F.3d 361 (2d Cir. 2014) ........ 10

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........ 7

*Flanigan v. General Electric*,
242 F.3d 78 (2d Cir. 2001) ........ 13

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
302 F.3d 18 (2d Cir. 2002) ........ 10

*Holliday v. Xeroz Corp.*,
732 F.2d 548 (6th Cir. 1984) ........ 2

*Hughes v. NW. Univ.*,
63 F.4th 615 (7th Cir. 2023) ........ 6

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ........ 10, 11, 12, 13

*Hutchins v. HP Inc.*,
No. 23-cv-05875-BLF, 2024 WL 3049456 (N.D. Cal. Jun. 17, 2024) ........ *passim*

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

*In re Gilead Scs. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 5

*Krohnengold v. New York Life Ins. Co.*,
No. 21-cv-1778 (JMF), 2021 WL 3227812 (S.D.N.Y. Aug. 10, 2022) .......... 12

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) .......... 5, 14, 15

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) .......... 6

*Maez v. Mountain States Tel. & Tel., Inc.*,
54 F.3d 1488 (10th Cir. 1995) .......... 12

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .......... 2

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) .......... 9

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......... 10

*Perez-Cruet v. Qualcomm Inc.*,
No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024) .......... 7, 8

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
541 U.S. 1 (2004) .......... 11

*Rodriguez v. Intuit Inc.*,
No. 23-cv-5053, 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) .......... 7, 8

*Rush Prud. HMO, Inc. v. Moran*,
536 U.S. 335 (2002) .......... 7

*Thomas v. Oregon Fruit Products Co.*,
228 F.3d 991 (9th Cir. 2000) .......... 16

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) .......... 6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 2

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) .......... 10

*Wright v. Oregon Matallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) .......... 5, 6, 14

**ERISA Statutory Provisions**

ERISA § 3(21) (A), 29 U.S.C. § 1002(21)(A) .......... 10

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).......... 4, 11
ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).......... 4
ERISA § 406(a)(1) and (b), 29 U.S.C. § 1106(a)(1) and (b).......... 4, 14

**Internal Revnue Code Provisions**

Internal Revenue Code § 401(a).......... 8
Internal Revenue Code § 401(k).......... 8
Internal Revenue Code § 414(f).......... 2, 3

**Regulations and Rules**

26 C.F.R. § 1.401-7(a).......... 8
Fed. R. Civ. Proc. 12(b)(6).......... 2, 5

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

# I. INTRODUCTION

Plaintiff's FAC[1] recycles allegations from a recent wave of ERISA lawsuits that are based on a novel theory that Plan forfeitures may *never* be used to offset employer contribution obligations and must *always* be used to pay administrative expenses. Using plan forfeitures to offset employer contributions, Plaintiff alleges, violates ERISA's fiduciary duties, prohibited transaction rules, and anti-inurement restrictions. Plaintiff's theory also assumes that she should receive more benefits than what she is entitled to under ERISA or the Plan, in the form of payment of administrative expenses that are properly chargeable to participant accounts. The sheer breadth of her theory renders it implausible, and her FAC should be dismissed in its entirety.

Under the Plan, forfeitures are first used to restore accounts of rehired or missing participants who have been located, and any remaining forfeitures may be used to offset administrative expenses or employer contribution obligations. This structure is consistent with decades of industry practice and is permitted under regulations issued by the U.S. Department of the Treasury and the Internal Revenue Service, which have oversight over the Plan. Plaintiff does not allege that the Plan itself violates ERISA, yet she alleges Defendants breached their fiduciary duties by following the Plan's terms. Plaintiff identifies no statutory authority to support such an absurd position.

Plaintiff's prohibited transaction claim is also implausibly pleaded because reallocating forfeitures within the Plan is not the type of "transaction" contemplated by ERISA's prohibited transaction rules. Those rules are aimed at certain types of commercial transactions that pose inherent risks to ERISA plans, not the administrative process of reallocating amounts within the Plan. And Plaintiff's anti-inurement claim is implausible because she does not allege that any money left the Plan and enriched Defendants. These claims should also be dismissed, and because Plaintiff cannot cure the flaws in her claims by amendment, her FAC should be dismissed with prejudice.

[1] Capitalized terms and acronyms are defined in the Relevant Facts Section, II.

## II. RELEVANT FACTS

### A. The Plan.

Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") is the sponsor of the Kaiser Permanente 401(k) Retirement Plan ("Plan"). Declaration of Clarissa A. Kang ("Kang Dec."), Ex. 1 (Plan Document), p. 11, § 1.1.[2] The Plan is a multiemployer plan under Internal Revenue Code § 414(f), is maintained pursuant to one or more collective bargaining agreements, and is a plan to which more than one employer is required to contribute. *Id.* Defendant Southern California Permanente Medical Group ("SCPMG") is one such contributing employer to the Plan. *Id.*, p.106, Appendix A. As one of the "Participating Companies" in the Plan, SCPMG has adopted the Plan's terms for the benefit of its eligible employees. *Id.*, pp. 86-87, § 13.3(a). Defendant Kaiser Permanente Administrative Committee ("KPAC") is the Plan's administrator and named fiduciary of the Plan for all respects other than investment matters. *Id.*, p. 89, § 14.1.

[2] Defendants request that the Court take judicial notice of the Plan Document, attached as Exhibit 1 to the Kang Dec. On a motion to dismiss, the Court may consider documents outside of the FAC that are judicially noticed or incorporated by reference in the FAC, without converting the motion to dismiss into a motion for summary judgment. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (judicial notice is appropriate if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity"). "Even if a document is not attached to a complaint, [if it is] incorporated by reference into a complaint [because] the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("insurance coverage . . . based on the contents of a coverage plan"). A "court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hutchins v. HP Inc.*, No. 23-cv-05875-BLF, 2024 WL 3049456, at *2 (N.D. Cal. Jun. 17, 2024) (citing Fed. R. Evid. 201).

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

The Plan is funded by a combination of employee deferrals and several forms of contributions from Participating Companies, including employer match contributions. *Id.*, pp. 35-48, §§ 4.1 – 4.11. Plan assets are held in a single trust and are available to pay benefits to the Plan's participants and beneficiaries. *Id.*, p. 87, § 13.3(b). Reasonable and proper expenses of administering the Plan may be paid from the Plan's trust. *Id.*, p. 92, § 14.8.

Participants are fully vested in their own elective deferrals (i.e., contributions) to the Plan. *Id.*, pp. 63-64, § 9.1. Employer matching contributions vest on a 5-year, tiered schedule based on a participant's years of service. *Id.* If a participant is not fully vested in matching, performance-based, employer contributions and has a termination of employment with a Participating Company, the non-vested portions of the participant's account are "forfeited" and become available for reallocation within the Plan. *Id.*, pp. 64, § 9.3(a). If such a participant later returns to work for a Participating Company, their accounts may be credited with the amount which they forfeited under the Plan's terms. *Id.*, p. 47, § 4.10. If participants are entitled to a benefit under the Plan but become missing, amounts in their Plan account are forfeited after 180 days from the date that they became eligible for the benefit. *Id.*, pp. 77-78, § 11.6. In the event that a missing participant is located and makes a claim for benefits, the amount that was previously forfeited is restored to that person's account as appropriate. *Id.*

Only if Plan forfeitures are not used for the restoration payments to rehired employees under Section 4.10 or to replace abandoned accounts under Section 11.6, as described above, KPAC may use the forfeitures to: (1) pay reasonable administrative expenses of the Plan or (2) reduce a Participating Company's contribution obligations, if any, as allowable under the Plan's terms. *Id.*, p. 52, § 6.5.

**B. Plaintiff's allegations and claims for relief.**

Plaintiff Stacey Madrigal ("Plaintiff"), a former employee of SCPMG and participant in the Plan, alleges that KFHP, SCPMG, and KPAC (collectively, "Defendants") used Plan forfeitures in a way that violated the Employee Retirement

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Income Security Act of 1974, as amended ("ERISA"). FAC, Dkt. 1, ¶¶ 1, 5. Without any basis in fact, Plaintiff contends that Defendants used forfeitures to reduce employer contribution obligations, rather than paying down administrative expenses. *Id.*, ¶¶ 1, 19. She alleges Defendants benefited by choosing to use forfeited amounts to reduce contribution obligations, over the interest of the Plan's participants. *Id.*, ¶ 20.

Plaintiff asserts four claims for relief:

- First Claim for Relief: alleged violation of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), against all Defendants for breach of ERISA's fiduciary duties of prudence and loyalty based on the alleged use of Plan forfeitures to offset employer contributions instead of reducing Plan expenses. *Id.*, ¶¶ 33-41.
- Second Claim for Relief: alleged violation of ERISA's anti-inurement provision under ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), based on allegations that Plan forfeitures inured to the benefit of Defendants when they were allegedly used to offset employer contribution obligations. *Id.*, ¶¶ 42-46.
- Third Claim for Relief: alleged violation of ERISA's prohibited transaction rules under ERISA § 406(a)(1) and (b), 29 U.S.C. § 1106(a)(1) and (b), based on allegations that Defendants caused the Plan to engage in transactions that (1) constituted a direct or indirect exchange of Plan assets for Defendants' own benefit, and (2) dealt with Plan assets for Defendants' own interest and for their own account. *Id.*, ¶¶ 47-52.
- Fourth Claim for Relief: alleged violation of the duty to monitor Plan fiduciaries that appears[3] to be based on allegations that KFHP failed to monitor KPAC, to which Plaintiff claims KFHP delegated responsibilities to direct the Plan trustee

[3] Plaintiff identifies "Kaiser" as the target of her Fourth Claim for Relief (*id.*, ¶¶ 54-56), which is defined as meaning all three Defendants in Paragraph 10. But, putting Plaintiff's Fourth Claim in context, it appears that this claim is asserted against KFHP based on allegations that it failed to monitor the Committee that had the authority over the use of the Plan's assets, which is KPAC. *Id.*

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

with respect to crediting and distributing Plan assets. *Id.*, ¶¶ 53-57.

Plaintiff does not allege that she or any other participant received less benefits than what they were entitled to under the Plan. *Id.*, *generally*.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead enough facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). The "Court need not 'accept as true allegations that contradict matters properly subject to judicial notice' or 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *HP*, 2024 WL 3049456, at *2 (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

## IV. ARGUMENT

### A. Plaintiff has not plausibly alleged that Defendants breached their fiduciary duties.

Plaintiff's fiduciary breach claims are implausible because Defendants complied with the Plan Document, applicable regulations, and ERISA. Defendants were not obligated to provide Plaintiff with additional benefits that were not owed to her under the Plan. ERISA does not "mandate what kind of benefits employers must provide if they choose to have [] a plan." *HP*, 2024 WL 3049456, at *5–6 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)). "ERISA does no more than protect the benefits which are due to an employee under a plan." *Id.* (citing *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999)). ERISA does not require that any certain type of benefit be provided, nor does it mandate how plans pay their administrative costs. *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ("Congress

sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place'") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). Plaintiff asks the Court to read obligations into ERISA that do not exist.

**1. Plaintiff's claims are implausible because she seeks an additional benefit not provided under the Plan or ERISA.**

Plaintiff does not dispute that the Plan permits the use of forfeitures to reduce employer contributions. The Plan Document governs KPAC's conduct and defines the rights and obligations of the Plan's sponsor, fiduciaries, and participants. *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013). KPAC did no wrong in abiding by the Plan. In fact, KPAC was obligated to do so because it was required to "comply with [the Plan] as written unless it is inconsistent with ERISA." *Wright*, 360 F.3d at 1100. Plaintiff does not allege that the Plan Document violated ERISA.

Plaintiff claims that Defendants breached their fiduciary duties by allegedly using forfeitures to offset employer contribution obligations instead of using those amounts to pay administrative expenses. FAC, ¶¶ 33-41. This theory of liability is so broad that it is implausible. *See HP*, 2024 WL 3049456, at *5–6 (dismissing similar claims on the basis that "Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible"). Plaintiff is, in effect, asking the Court to hold that forfeited amounts must *always* be used to pay administrative expenses, and that using forfeitures to offset employer contributions would *always* be a violation of ERISA. ERISA contains no mandate that administrative expenses must be paid from sources outside of the Plan, like, for example, by the Plan sponsor. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrog. on other grounds by Hughes v. NW. Univ.*, 63 F.4th 615, 622 (7th Cir. 2023), (ERISA does not require employers to make retirement plans more valuable by paying expenses); *Conkright*, 559 U.S. at 517 ("ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities …'") (citing *Rush Prud. HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Plaintiff seeks to extend ERISA's protections beyond its statutory framework in asserting that ERISA's duties of loyalty and prudence create a benefit for her that is not required under either ERISA or the Plan – the payment of her administrative costs. Plaintiff provides no allegations to support a claim that she is entitled to this additional benefit, and her breach of fiduciary duties claims should be dismissed as implausible.[4] *HP*, 2024 WL 3049456, at *5–6. Neither Plaintiff nor any of the Plan's participants received less than what they are entitled to under the Plan's terms.

Defendants anticipate that Plaintiffs will rely on two recent decisions denying motions to dismiss in cases involving the use of plan forfeitures, *Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024) and *Rodriguez v. Intuit Inc.*, No. 23-cv-5053, 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024). Those decisions are distinguishable. As *HP* soundly concluded, *Qualcomm* is "conclusory and does not directly address many of the points made by Defendants in the motion to dismiss … [and] the Court does not find [*Qualcomm*] persuasive in deciding the motion to dismiss in this case." *HP*, 2024 WL 3049456, at *5. The Court should find the same in this case. In *Intuit*, the plan document contained provisions that are dissimilar to the Plan provisions in this case. The Intuit plan only allowed forfeitures to be used to offset *certain* types of employer contribution obligations, and the plaintiffs alleged that the defendants used forfeitures to offset contribution obligations not allowed under that plan. *See Intuit*, 2024 WL 3755367, at *6. There are no such allegations in this case. And where the district court denied Intuit's motion to dismiss on grounds not related to those unique plan terms, the court's holdings were conclusory like the holdings in *Qualcomm* and are equally unpersuasive. *See, e.g., id.* (concluding that "even if Intuit had complied with the terms of the Plan Document, that

---

[4] Plaintiff's theory of liability would also require the Court to hold that a fiduciary ignored relevant facts and circumstances in deciding how to use forfeited amounts under the Plan, which contradicts Supreme Court authority. *See HP*, 2024 WL 3049456, at *6 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) ("the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific").

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

alone would not excuse Intuit from fulfilling its fiduciary duties under ERISA" without providing any legal basis or analysis to support this holding).

**2. Allocating forfeitures to offset employer contributions is consistent with decades of government regulation.**

Plaintiff's novel theory of liability is also implausible because it is contradicted by decades of government regulation of ERISA defined contribution plans and widespread industry practice. The Treasury Department ("Treasury") and the IRS oversee the qualification of defined contribution plans, like the Plan. *See* 26 U.S.C. § 401; Ex. 1, p. 11, § 1.1 (the "Plan is intended to be a profit-sharing plan qualified under [Internal Revenue] Code Section 401(a) with a cash or deferred arrangement under [Internal Revenue] Code Section 401(k) . . .") In carrying out this oversight, Treasury is authorized to issue formal regulations interpreting tax rules as they apply to defined contribution plans, like Treasury Regulation 26 C.F.R. § 1.401-7(a), which provides:

> In the case of a trust forming a part of a qualified pension plan, the plan must expressly provide that forfeitures arising from severance of employment, death, or for any other reason, must not be applied to increase the benefits any employee would otherwise receive under the plan at any time prior to the termination of the plan or the complete discontinuance of employer contributions thereunder. The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan.

26 C.F.R. § 1.401-7(a); *see also* Rev. Ruling 67-68, 1967-1 C.B.86; DOL Adv. Op. 79-56A, 1979 WL 7031 (Aug. 9, 1979). Consistent with current Treasury regulations permitting the use of forfeitures to reduce contribution obligations, Treasury has proposed a new regulation for forfeitures in qualified retirement plans:

> the proposed regulation would clarify that forfeitures arising in any defined contribution plan (including in a money purchase pension plan) may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms.

*Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023). This guidance expressly allows the use of forfeitures to "be reallocated to the remaining participants under a nondiscriminatory formula, used to reduce future

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

employer contributions, or used to offset administrative expenses of the plan." *Id*.

As *HP* aptly recognized, the "Conference Report accompanying the Tax Reform Act of 1986 'noted that changes made by [the Act] provided uniform rules regarding the use of forfeitures under any defined contribution plan' under which forfeitures could be reallocated to the accounts of other participants, used to reduce future employer contributions, or to reduce administrative costs." *HP*, 2024 WL 3049456, at *6 (citing H.R. Rep. 99-841, at II-442 (1986)). And, "[c]onsistent with these uniform rules and the historical understanding of defined contribution plans, the Treasury Department has proposed regulations that 'would clarify that forfeitures arising in any defined contribution plan' may be used for any one of the following: '(1) to pay administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms.'" *Id.*

Plaintiff essentially asks the Court to find that, not only is she entitled to an extra benefit not provided under ERISA or the Plan (i.e., the payment of her administrative expenses), but that ERISA abrogates Treasury regulations because those regulations are contrary to ERISA. Plaintiff presents no basis under ERISA, an incredibly detailed and intricate statute, to support such a conclusion. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) (ERISA is "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs"). Likewise, Plaintiff cites no provision in ERISA, or any other statute, that requires Plan forfeitures be used to pay administrative expenses or prohibits the use of forfeitures to offset employer contribution obligations. There are none. In fact, forfeitures are not addressed in ERISA's text at all.

For these reasons, Plaintiff's breach of fiduciary duty claims are implausible and should be dismissed, with prejudice.

**3. KFHP and SCPMG are not fiduciaries with regard to the use of Plan forfeitures.**

Plaintiff's fiduciary breach claims should be dismissed as to KFHP and SCPMG

because they do not act as fiduciaries regarding the use of Plan forfeitures. The first question in any case alleging breach of ERISA's fiduciary duties is "whether [the person employed to provide services under a plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA states:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Fiduciary duties "consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see also*, *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("Fiduciary functions include, for instance 'the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on'") (quoting *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir.2002)).

Plaintiff does not allege that either KFHP or SCPMG acted as fiduciaries with respect to the use of the Plan's forfeitures. To the contrary, Plaintiff alleges that "[KPAC] was delegated with the authority to direct the trustee with respect to crediting and distributing Plan assets." FAC, ¶ 9. Without any plausible allegations that either KFHP or SCPMG acted as a fiduciary with respect to the use of forfeitures, Plaintiff's breach of fiduciary duty claims against KFHP and SCPMG must be dismissed, with prejudice. *See Iqbal*, 556 U.S. at 678 (to survive dismissal, a plaintiff must allege more than conclusory allegations or "an unadorned, the-defendant-unlawfully-harmed-me accusation.")

**B. ERISA's anti-inurement provision was not violated because no assets inured to the benefit of Defendants.**

The alleged use of Plan forfeitures to offset employer contributions does not



Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

violate ERISA's anti-inurement provision because forfeitures remained in the Plan and were allegedly used to fund participant benefits. Under ERISA, "assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). In determining whether this rule is followed, courts "focus[] exclusively on whether fund assets were used to pay pension benefits to plan participants." Hughes Aircraft, 525 U.S. at 442; see also, Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 22 (2004) ("The provision demands only that plan assets be held for supplying benefits to plan participants."). Plaintiff does not allege that Defendants used any of the Plan forfeitures for any other purpose than for paying obligations to Plan participants by allegedly allocating forfeitures to offset employer contribution obligations. FAC, ¶ 18.

Under the Plan, and consistent with Plaintiff's allegations, forfeitures remained within the Plan's trust account and were used to benefit Plan participants. *See* FAC, ¶ 1 (alleging that "Defendants used forfeited plan assets to reduce its employer contribution obligations …"); ¶ 15 ("[o]nce deposited into the Plan's trust fund, all employee/participant contributions become assets of the Plan"); ¶ 18 ("Defendant's use of Plan forfeited assets to offset its employer contributions…"). Defendants, based on Plaintiff's allegations, merely reallocated the Plan forfeitures to offset employer contributions. *Id.*, ¶ 19. This activity, even if it was true, "is not a violation of the anti-inurement provision because the forfeited amounts are plan assets which do not leave the Plan trust fund and are used to pay pension benefits to Plan participants." *HP*, 2024 WL 3049456, at *8 (citing *Hughes Aircraft*, 525 U.S. at 442). ERISA's anti-inurement provision is focused on situations where assets are actually removed from the Plan. *Id.* ("claims under the anti-inurement provision usually require reversion or diversion of plan assets to the sponsor"); *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can only be violated if there has been a removal of plan assets for the benefit of the plan

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

sponsor or anyone other than the plan participants."); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995) (finding that a plaintiff failed to state a claim under the anti-inurement provision where "no such reversion, diversion, or any other sort of payment of surplus assets ... is alleged")). That did not occur here.

Further, where forfeitures are used to reduce an employer's ongoing contribution obligations, as Plaintiff alleges, any collateral benefit that the employer may receive from this allocation (*e.g.*, reduction in future contribution obligations) is incidental to the payment of benefits, which does not violate ERISA's anti-inurement provision. "Allegations of indirect or incidental benefits to an employer are insufficient to state a claim under the anti-inurement provision." *HP*, 2024 WL 3049456, at *7 (quotation marks omitted) (citing *Krohnengold v. N.Y. Life Ins. Co.*, No. 21-CV-1778 (JMF), 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022); *Hughes Aircraft*, 525 U.S. at 445 (noting that receipt of "incidental" benefits to an employer do not constitute a breach of the anti-inurement provision); *Holliday v. Xerox Corp.*, 732 F.2d 548, 551 (6th Cir. 1984) ("[The anti-inurement provision] cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective.")). Any incidental benefit Defendants allegedly received did not violate ERISA's anti-inurement rules.

This conclusion is consistent with Supreme Court and Second Circuit authority. In *Hughes Aircraft*, for example, the Supreme Court held that a plan sponsor did not violate ERISA's anti-inurement provision when it used surplus plan assets from a pension plan to fund a non-contributory structure created through a plan amendment, whereby new participants were not permitted to contribute to the plan. 525 U.S. at 442. Before the amendment, participants were required to contribute to the plan. *Id.* As plan assets grew and exceeded funding requirements, the employer decided to end the contribution requirement and use surplus assets to fund benefits for new employees. *Id.* Pre-amendment participants sued the employer on grounds that the employer's use

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

of the surplus assets violated ERISA's anti-inurement restrictions because it reduced the employer's contribution obligations to fund benefits for new employees. *Id.* The Supreme Court held that the employer did not violate ERISA's anti-inurement rules because benefits were used "for the sole purpose of paying pension benefits to Plan participants" and "satisfy[ing] its continuing obligation under the provisions of the Plan and ERISA to assure that the Plan was adequately funded." *Id.*

Similarly, in *Flanigan v. General Electric*, the Second Circuit held that the transfer of surplus assets from a GE pension plan to a Lockheed Martin plan during an acquisition did not violate ERISA's anti-inurement provision. *See* 242 F.3d 78, 88 (2d Cir. 2001). The Second Circuit held that "all of the pension surplus that GE transferred to Lockheed was used to fund pension benefits. Any benefit received by GE [including a higher sale price and an advantage in dealing with government contract claims] was, at most, indirect." *Id.* at 87–88. The same is alleged in this case, and Plaintiff's anti-inurement claim should be dismissed.

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

### C. Defendants did not cause any transaction that violated ERISA's prohibited transaction rules.

Plaintiff's prohibited transaction claim fails because "reallocation of forfeited amounts is neither prohibited nor a transaction." *HP*, 2024 WL 3049456, at *9. Under ERISA, a fiduciary:

> shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer

real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). ERISA also prohibits certain "[t]ransactions between plan and fiduciary," including where a fiduciary "deal[s] with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). In order to allege a violation of ERISA § 1106(a) or (b), a plaintiff must first plausibly allege that an unlawful transaction took place. *See Spink*, 517 U.S. at 888; *Wright*, 360 F.3d at 1101 ("Plaintiffs fail to identify any transaction that falls within § 1106(a)(1) or (b)").

Payment of benefits is not the type of "transaction" that is contemplated under ERISA's prohibited transactions rules. *See Spink*, 517 U.S. at 892–93. The types of transactions covered by ERISA § 1106(a)(1) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.* at 893. That is, these are the types of transactions that "involve uses of plan assets that are potentially harmful to the plan." *Id.* Simply using funds available to satisfy one benefit (past employer contributions to non-vested participants who forfeited those amounts) to fund a different benefit (current, ongoing employer contribution obligations), which would have otherwise been funded by the plan sponsor, is not a transaction prohibited by ERISA § 1106(a)(1) or (b)(1). *See, e.g.*, *Black v. Greater Bay Bancorp Exec. Suppl'l Comp. Benefits Plan*, No. 16-CV-00486-EDL, 2017 WL 8948732, at *8–9 (N.D. Cal. Jan. 18, 2017); *Chao v. Hagemeyer N. Am., Inc.*, No. 2:06-CV-01173-PMD, 2006 WL 8443663, at *6 (D.S.C. Oct. 20, 2006) (holding that "exchanges or 'reallocations' between accounts of plan participants" that constituted "a redistribution within the plan of the plan assets" was not a prohibited transaction).

Consistent with Plaintiff's allegations and the Plan Document, forfeitures remain Plan assets and are "merely reallocated to provide pension benefits to other employees through use as matching contributions." *HP*, 2024 WL 3049456, at *9–10. This "is not a prohibited transaction." *Id.* (citing *Hagemeyer*, 2006 WL 8443663, at *6). And "the fact that reallocation of the forfeited amounts will reduce the amount that [the

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

sponsor] contributes as matching contributions in the future does not make this a transaction for purposes of § 1106." *Id.* (citing *Black*, 2017 WL 8948732, at *8–9). As *HP* held, "this is not similar to the types of commercial transactions contemplated by Congress [when it drafted ERISA's prohibited transaction provisions] because Plaintiff does not allege any facts showing that the reallocation of forfeited amounts in this way put the Plan at 'a special risk of plan underfunding.'" *Id.* (*Spink*, 517 U.S. at 893).

Further, Plaintiff does not allege that KFHP or SCPMG were in a position to "cause" any allegedly prohibited transaction. Given their role with respect to the Plan, neither KFHP nor SCPMG had any involvement or discretion with the use of Plan forfeitures such that they *could* have caused a transaction prohibited by ERISA. *See* FAC, ¶ 9; Ex. 1, p. 52, § 6.5 (the "Plan Administrator [i.e., KPAC], in its sole discretion, may use such Forfeitures to pay the reasonable administrative expenses of the Plan or may apply such Forfeitures to reduce a Participating Company's obligation…"). Without any role in deciding how forfeitures were used, KFHP and SCPMG could not have caused the alleged prohibited transaction regarding the use of forfeitures.

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

**D. Failure to monitor claim fails because underlying claims fail.**

Plaintiff's failure to monitor claim should be dismissed because it is derivative of Plaintiff's other claims, and it fails for the same reasons those claims fail. *See Bracalente v. Cisco Sys., Inc.*, No. 5:22-CV-04417-EJD, 2023 WL 5184138, at *6 (N.D. Cal. Aug. 11, 2023) (dismissing a failure to monitor claim where the plaintiffs failed to state a claim for a breach of fiduciary duty).

**E. There is no right to a jury trial.**

If the Court allows any part of this lawsuit to proceed, Plaintiff's request for a jury trial should be denied and struck from her FAC because there is no right to a jury trial in ERISA cases. *See Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991, 997 (9th Cir. 2000) ("remedies available to a participant or beneficiary under ERISA are

equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries”).

## V. CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiff’s FAC, in its entirety, with prejudice.

Dated: September 9, 2024 TRUCKER ✦ HUSS

By: */s/ Clarissa A. Kang*
Clarissa A. Kang
Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; and KAISER PERMANENTE ADMINISTRATIVE COMMITTEE

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; KAISER PERMANENTE ADMININSTRATIVE COMMITTEE, certifies that this brief contains 5,013 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 9, 2024

TRUCKER ✦ HUSS

By: /s/ *Clarissa A. Kang*
Clarissa A. Kang
Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; and KAISER PERMANENTE ADMINISTRATIVE COMMITTEE

Trucker ✦ Huss
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, California 94105