Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Alfredo Torrijos, SBN 222458
at@haffnerlawyers.com
Vahan Mikayelyan, SBN 337023
vh@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681 / Fax: (213) 514-5682

Attorneys for Plaintiff
and the Proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STACEY M. MADRIGAL, individually and as representative of a class of participants and beneficiaries and on behalf of the Kaiser Permanente 401K Retirement Plan,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; KAISER PERMANENTE 401K RETIREMENT PLAN COMMITTEE; and DOES 1-10, inclusive<br><br>Defendants. | **Case No. 2:24-cv-05191 MRA**<br><br>Date action filed: June 20, 2024<br><br>Assigned to: Hon. Monica Ramirez Almadani<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: December 5, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10B |

# TABLE OF CONTENTS


I. INTRODUCTION. ..... 1

II. FACTUAL ALLEGATIONS AND PLAN PROVISIONS. ..... 1

A. THE PLAN FIDUCIARIES. ..... 1

B. FUNDING OF PLAN AND DEFENDANTS' MATCHING OBLIGATION. ..... 2

C. THE PLAN'S FORFEITURE PROVISIONS. ..... 2

D. DEFENDANT'S USE OF FORFEITED FUNDS FOR ITS OWN BENEFIT. ..... 4

III. LEGAL ARGUMENT. ..... 4

A. STANDARD ON MOTION TO DISMISS ..... 4

B. PLAINTIFF HAS PROPERLY PLED A BREACH OF FIDUCIARY DUTY CLAIM. ..... 5

*1. Plaintiff Properly Alleges Defendants Are Fiduciaries. ..... 5*

*2. Plaintiffs Alleges Breach Of Fiduciary Duty. ..... 6*

C. PLAINTIFF HAS PROPERLY PLED A CLAIM FOR VIOLATION OF ERISA'S ANTI-INUREMENT PROVISION. ..... 11

D. PLAINTIFF'S HAVE PROPERLY PLED A CLAIM FOR PROHIBITED TRANSACTIONS UNDER ERISA. ..... 14

E. DEFENDANTS' RELIANCE ON TREASURY REGULATIONS IS MERITLESS. ..... 16

F. DEFENDANT'S RELIANCE ON PROPOSED IRS REGULATIONS IS MERITLESS. ..... 19

G. THE MORE PERSUASIVE CASE LAW ADDRESSING USE OF FORFEITURES SUPPORTS PLAINTIFF'S CLAIM. ..... 20

IV. IF THE COURT IS INCLINED TO GRANT THIS MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND. ..... 22

V. CONCLUSION. ..... 23

# TABLE OF AUTHORITIES

Cases

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, (2004) .......... 13
*Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) .......... 14
*Aldridge, supra*, 953 F.2d at n.6 .......... 14
*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) .......... 5
*Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021) .......... 5
*Barnes v. Independent Auto Dealers Ass'n* (9th Cir. 1995) 64 F.3d 1389, 1393 .......... 9
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......... 4
*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) .......... 5
*Black v. Greater Bay Bancorp*, 2017 WL 8948732 (N.D. Cal. 2017) .......... 16
*Chao v. Hagemeyer N.Am., Inc.*, 2006 WL 8443663 (D.S.C. 2006) .......... 16
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) .......... 22
*Estate of Howard v. Comm'r*, 910 F.2d 633, 636 (9th Cir. 1990) .......... 20
*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) .......... 7
*Flanigan v. General Electric*, 242 F.3d 78 (2d Cir. 2001) .......... 14
*Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990) .......... 20
*Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) .......... 4
*Holliday v. Xerox*, 732 F.2d 548 (6th Cir. 1984) .......... 13
*HP, supra*, 2024 WL 3049456 at *6 .......... 21
*HP, supra*, 2024 WL 3049456 at *9 .......... 21
*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) .......... 13
*Hughes, supra*, 525 U.S. at 439 .......... 16
*Intuit, supra*, -- F.Supp.3d. --, 2024 WL 3755367 at *4 .......... 6
*Intuit, supra,* 2024 WL 3755367 at *5 .......... 7
*Intuit, supra*, 2024 WL 3755367 at *6 .......... 7

*Intuit*, *supra*, 2024 WL 3755367, at *10 .......... 15
*Intuit*, *supra*, 2024 WL 3755367, at *8 .......... 10, 19
*Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995) .......... 14
*Maez*, *supra*, 54 F.3d at 1506 .......... 14
*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) .......... 9
*Murphy v. DirecTV*, 724 F.3d 1218, 1234 (9th Cir.2013) .......... 9
*NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) .......... 4
*Qualcomm*, *supra*, 2024 WL 2702207 at *1 .......... 8
*Qualcomm*, *supra*, 2024 WL 2702207 at *2 .......... 7
*Qualcomm*, *supra*, 2024 WL 2702207 at *3 .......... 7
*Qualcomm*, *supra*, 2024 WL 2702207 at *6 .......... 15
*Qualcomm*, *supra*, 2024 WL 2702207 at *7 .......... 19
*Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997) .......... 15
*Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000) .......... 19
*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) .......... 17
*Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) .......... 10

<u>Statutes</u>

1104(a)(1)(A) and (B) .......... 8
26 C.F.R. § 1.401-1(b)(1)(i) .......... 18
26 C.F.R. § 1.401-1(b)(1)(ii) .......... 18
26 C.F.R. § 1.401-7 .......... 17
26 U.S.C. § 401(a)(8) .......... 17
29 U.S.C. § 1002(21)(A) .......... 5
29 U.S.C. § 1103(c)(1) .......... 11
29 U.S.C. § 1104(a)(1)(A) .......... 21
29 U.S.C. § 1104(a)(1)(A)(ii) .......... 1

29 U.S.C. § 1104(a)(1)(B) ..... 7
29 U.S.C. § 1104(a)(1)(D) ..... 8
29 U.S.C. § 1106(a)(1) ..... 14
29 U.S.C. § 1106(b)(1) ..... 15
29 U.S.C. § 1109(a) ..... 16
29 U.S.C. § 1144(d) ..... 19
29 U.S.C. §1001(b) ..... 12
Treasury Regulation 26 C.F.R. § 1.401-7(a) ..... 16

Regulations

88 Fed. Reg. 12282, 12285 (2023) ..... 19
88 Fed. Reg. 12282, at 12285 ..... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction.

This action arises out of Defendants' conduct in wrongfully using forfeited funds from its employees' 401k retirement plan for its own benefit, to reduce its employer matching contributions, instead of using those funds for the benefit of Plan participants. This self-dealing conduct violates Defendant's fiduciary duty, which required Defendants to act in the interest of the Plan participants to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(ii). Moreover, the Plan terms do not permit Defendants to use forfeitures to offset employer's future matching obligations, and Defendants' violation of the Plan for its own benefit also violates Defendants' fiduciary duty.

Plaintiff has properly stated claims pursuant to the Employee Retirement Security Act ("ERISA") for breach of fiduciary duties, violation of the anti-inurement clause, and prohibited transactions, in connection with Defendant's wrongful use of their employee's 401k Plan assets for their own benefit. Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

### II. Factual Allegations And Plan Provisions.

Plaintiff is a participant in the Kaiser Permanente 401K Retirement Plan (the "Plan"), through her employer. FAC, ¶5.

#### A. The Plan Fiduciaries.

Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") is listed in the Plan as founder who "established and maintains the Plan." Dkt. No. 25-2, p.10 of 121, § 1.1.[1] KFPH is defined as the "Company," Dkt.25-2, p.13 of 121, § 2.21, and is

[1] *See also* Plaintiff's Request for Judicial Notice, Exh. 1, p.1 (Defendants' Form 5500, listing Kaiser Foundation Health Plan, Inc. as plan sponsor).

vested with discretion throughout the Plan, Dkt. 25-2, pp.48-49 of 121, §§ 5.2(a), (b), and (e), 13.1. Defendant KFPH is vested with "sole discretion . . . [to] pay any such expenses directly and not seek reimbursement, or reimburse the Plan for any proper expenses incurred by the Plan." Dkt. No. 25-2, p.91 of 121, § 14.8.

Defendant Kaiser Permanente Administrative Committee ("Kaiser Committee") is defined under the Plan as "the Committee that is responsible for administering the Plan." Dkt. No. 25-2, p.12 of 121, § 2.3. Defendant Kaiser Committee, is vested with discretion on how to use forfeited Plan assets. Dkt. 25-2, p. 51 of 121, § 6.5.

**B. Funding Of Plan And Defendants' Matching Obligation.**

Employees can elect to having monies withheld from their paycheck to contribute to their 401k Plan. Dkt. 25-2, p.34 of 121, § 4.1(a). Kaiser is obligated to make annual "Matching Contributions" to the Plan on behalf of each eligible participant "in an amount equal to the amount by which . . .[employee's] Compensation has been reduced for such period pursuant to their Deferral election." Dkt. No.25-2, p.34 of 121, § 4.1(a). The timing for payment of matching contributions "by the deadline to treat such contributions as allocations for the prior Plan Year . . ." Dkt. 25-2, p. 46 of 121, § 4.9(b). The Plan provides, under employer "Matching Contributions" sections that the employer "shall make" matching contributions for employees participating in the Plan. Dkt. 25-2, pp.39, 41 of 121, § 4.2(a)(i) (Matching Contributions), 4.3(a) (True-Up Matching Contributions).

**C. The Plan's Forfeiture Provisions.**

Defendants' Plan has a 5-year vesting period before an employee is 100% vested. Dkt. 25-2, pp. 62-63 of 121, § 9.1. If an employee leaves within that 5-year period, non-vested portions of the participant's account are "forfeited." Dkt. No.

25-2, p. 63 of 121, § 9.3(a). The forfeiture by employees who leave prior to the vesting period applies to monies held in participant's "Matching Account . . . and Employer Contributions Account . . ." *Id*.

The Plan provides that Defendants, "in its sole discretion," may use forfeited Plan assets to pay Participants' administrative expenses, or offset *certain* future employer contributions.

> "The Plan Administrator, ***in its sole discretion***, may use such Forfeitures to pay the reasonable administrative expenses of the Plan or may apply such Forfeitures to reduce a Participating Company's obligation, if any, to make Employer and/or Supplemental Contributions, or qualified non-elective contributions. . ." Dkt. No. 25-2, p. 51 of 121, § 6.5 (emphasis added).

The Forfeiture provision ***does not*** permit Defendant to offset forfeitures against an employer's Matching Contribution. Indeed, under the Plan terms, "Matching Contributions" ***are distinct from and significantly broader than*** "Employer and/or Supplemental Contributions, or qualified non-elective contributions" referenced in the forfeiture provision. Compare Dkt. No. 25-2, p. 21, 24, 30 of 121, § 2.43 (Employer Contribution), § 2.65 (Matching Contribution), § 2.108 (Supplemental Contributions).

- Matching Contributions apply to all Eligible Employees after they "complete one (1) year of Service." Dkt. No. 25-2, p. 32 of 121, § 3.1 (b).
- Employers Contributions only apply to certain Dieticians and Therapists, as well as Pharmacists, in Northern California, and only after they "complete two (2) years of Service.". Dkt. No. 25-2, p. 32 of 121, § 3.1(d)(i).
- Supplemental Contributions is for the ADP Test for non-discrimination.

Dkt. No. 25-2, p. 45 of 121, § 4.7; *see also* § 7.2[2].

**D. Defendant's Use Of Forfeited Funds For Its Own Benefit.**

Plaintiff alleges that Defendant has exercised its discretion to use forfeited Plan assets for its own benefit, in reducing future employer contributions, rather than for the benefit of Plan participants by paying Plan expenses. FAC, ¶19.

Defendant's 2022, Form 5500 filing states "Forfeitures are used to reduce future employer contributions." Plaintiff's Request for Judicial Notice, Exh.1, p.7. In its Form 5500, Defendants state that for the year 2022, it had 1,897 employee "participants who terminated employment during the plan year with accrued benefits that were less than 100% vested." *Id*. at p.2, ¶6.h.

Plaintiff alleges that Defendants' misuse of forfeited Plan assets cost the Plan "millions of dollars in contribution costs." FAC, ¶45.

**III. Legal Argument.**

Plaintiff has adequately alleged ERISA claims based on Defendants' misuse of forfeited Plan assets for its own benefit.

**A. Standard On Motion To Dismiss**

Motions to dismiss for failure to state a claim are generally disfavored. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).

In order to state a claim, Plaintiff need only allege facts, assumed to be true, that "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering whether the complaint is sufficient to state a claim, the court will consider all material allegations as true and construe them in the light most favorable to the plaintiffs. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

[2] Supplemental Contributions is synonymous with "qualified non-elective contributions." Dkt. No. 25-2, p. 30 of 121, § 2.108.

To satisfy pleading standards, all that is required is that the complaint state sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Plaintiff Has Properly Pled A Breach Of Fiduciary Duty Claim.**

Plaintiff breach of fiduciary duty in connection with Defendants' decision to use forfeited Plan assets for its own benefit, instead of the benefit of the Plan participants, is properly pled. "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

**1. Plaintiff Properly Alleges Defendants Are Fiduciaries.**

Here, Defendants "are fiduciaries of the Plan" under ERISA. FAC, ¶ 11. Defendants concede that Defendant Kaiser Committee is a Plan fiduciary, but argue that Defendant KFHP did not act as a fiduciary under the Plan. Dkt. No. 25, pp.15-16 of 23. This assertion lacks merit.

The Plan states fiduciary "means a person who is a fiduciary as defined in ERISA." Dkt. No. 25-2, p.11 of 121, § 2.46. ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Here, the Plan provides that Defendant KFHP "established and maintains the Plan," Dkt. No. 25-2, p.10 of 121, § 1.1, is defined in the Plan as the "Company," Dkt. No. 25-2, p.13 of 121, § 2.21, and is vested with discretion throughout the Plan, Dkt. No. 25-2, pp.48-49 of

121, §§ 5.2(a), (b), and (e), 13.1. Among other things, Defendant KFHP is vested with "sole discretion . . . [to] pay any such expenses directly and not seek reimbursement, or reimburse the Plan for any proper expenses incurred by the Plan." Dkt. No. 25-2, p.91 of 121, § 14.8. KFPH's authority over paying expenses, seeking reimbursement or not seeking reimbursement of expenses, directly implicates Defendants' decision at issue in this case not pay administrative expenses with forfeited assets, and instead offset employer contributions. Accordingly, KFHP is an ERISA fiduciary, at least at the pleading stage. *Intuit*, *supra*, -- F.Supp.3d. --, 2024 WL 3755367 at *4 ("'discretionary responsibility in the administration of the plan' implies that [it] is a fiduciary of the plan").[3]

**2. Plaintiffs Alleges Breach Of Fiduciary Duty.**

With respect to the second element, Plaintiff also properly alleges Defendants breached their fiduciary duty.

**a) Defendant's Breached Their Fiduciary Duty By Exercising Their Discretion For Their Own Benefit, Instead Of To "Defray Reasonable Expenses."**

Plaintiff properly alleges Defendants' breached their to Plaintiff to fiduciary duty to "defray[] reasonable expenses of administering the plan," 29 U.S.C. § 1104(a)(1)(A)(ii).

Thus, although the Plan provides Defendants with discretion to use forfeited funds to cover Plan expenses, Dkt. No. 25-2, p. 51 of 121, § 6.5, Plaintiff alleges Defendants consistently declined to use any forfeitures for such purpose, and chose instead to benefit itself by offsetting employer matching contributions. This properly alleges a breach of fiduciary duty of loyalty under Section 1104(a)(1)(A). *See*

[3] Plaintiffs' do not oppose Defendants' motion as to the breach of fiduciary duty claim against Plaintiff's employer, Defendant Southern California Permanente Medical Group.

*Qualcomm*, *supra*, 2024 WL 2702207 at *2 ("Plaintiff plausibly claims that the Defendants breached their fiduciary duty to Plan participants by making a choice that put the employer's interests above the interests of the Plan participants"); and *Intuit*, *supra,* 2024 WL 3755367 at *5 ("the complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use forfeitures to reduce its own contributions during the class period").

Based on the same facts, Plaintiff also adequately alleges a claim that Defendants' breached their duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Plaintiff's claim that Defendants misuse of forfeited assets for their own benefit, instead of for plan participants by offsetting expenses, states a claim for breach of the fiduciary duty of prudence under ERISA. *Qualcomm*, *supra*, 2024 WL 2702207 at *3 ("Plaintiff has articulated a plausible claim of a breach of the duty of prudence by Defendants"); and *Intuit*, *supra*, 2024 WL 3755367 at *6 ("[t]he complaint alleges that the defendants breached the duty of prudence").

Moreover, even if the Plan gave Defendants discretion to offset forfeitures against employer matching contributions (and there is a plausible claim it did not, see section III.2.c, *infra*), Defendants' decision to exercise its discretion under Section 6.5 of the Plan for its benefit, rather than for the benefit of participants, nevertheless provides a basis for Plaintiff's breach of fiduciary duty claim. This is because an ERISA's fiduciary duties "trump[ ] the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). Indeed, fiduciaries are only permitted to follow Plan documents "insofar as such documents and

instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D). Thus, *Inuit* held, that Plan provisions providing discretion in connection with use of forfeited funds "alone would not excuse [Defendants] from fulfilling its fiduciary duties under ERISA." *Intuit*, *supra*, 2024 WL 3755367 at *6. *Qualcomm* reached the same holding. *Qualcomm*, *supra*, 2024 WL 2702207 at *1 (upholding claim that "Defendants' fiduciary duties under ERISA leave only one choice: defray administrative expenses").

Plaintiff has plausibly stated a claim that Defendants violated their fiduciary duty under 1104(a)(1)(A) and (B).

**b) Defendants Breached Their Fiduciary Duty By Violating Plan Terms In Using Forfeitures To Offset Matching Contributions.**

Defendants violated the Plan by offsetting forfeitures against Defendants' "Matching Contribution" obligations under the Plan. Defendants have a fiduciary duty to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

Thus, while the Plan provides that employees who leave prior to vesting forfeit their "Matching Account . . . and Employer Contributions Account," Dkt. No. 25-2, p. 63 of 121, § 9.3(a), the forfeiture provision only provides Defendants with discretion to offset the limited subset of contributions for "Employer and/or Supplemental Contributions, or qualified non-elective contributions."[4] Dkt. No. 25-2, p. 51 of 121, § 6.5. The "Matching Contributions" are distinct from ***and much broader than*** the Employer and/or Supplemental Contributions referenced in the

[4]Supplemental Contributions is for the ADP Test for non-discrimination, and is synonymous with "qualified non-elective contributions." Dkt. No. 25-2, pp. 30, 45, 53 of 121, §§ 2.108, 4.7; *see also* § 7.2.

forfeiture provision. Dkt. No. 25-2, p. 21, 24, 30, 32 of 121, § 2.43, § 2.65, § 2.108, § 3.1(b) and (d). Thus, Matching Contributions apply to all "Eligible Employees" after 1 year of service, Dkt. No. 25-2, p. 32 of 121, § 3.1 (b), while Employers Contributions only apply to Dieticians, Therapists, and Pharmacists, in Northern California, after 2 years of service. *Id*. at § 3.1(d)(i). By its terms, Defendant's discretion to offset under the forfeiture provision is limited, and ***does not*** include discretion to offset forfeitures against an employer's "Matching Contributions." Dkt. No. 25-2, p. 51 of 121, § 6.5. To the extent the forfeiture provision is ambiguous as to whether forfeitures can be used to offset Matching Contributions, it should be interpreted against Defendants. "We must construe ambiguities in an ERISA plan against the drafter and in favor of the insured." *Barnes v. Independent Auto Dealers Ass'n* (9th Cir. 1995) 64 F.3d 1389, 1393.[5] Indeed, under the legal interpretive doctrine of "expressio unius est exclusio alterius," omitting "Matching Contributions" from the forfeiture provision "implies the exclusion" of it. *Murphy v. DirecTV*, 724 F.3d 1218, 1234 (9th Cir.2013). Thus, under Plan terms, Defendants' discretion is limited to using forfeitures to offset Employer and/or Supplemental Contributions, or qualified non-elective contributions," and not "Matching Contributions."

Defendants, however, admit that forfeiture offsets, or "reallocations," were applied to Defendants' "matching" contributions. Dkt. No. 25, p. 9 of 23, lines 9-13. This is a direct violation of the terms of the Plan, which foreclose any discretion to offset against Matching Contributions. Accordingly, as in *Intuit*, Plaintiff "provides a plausible interpretation of the Plan Document . . . as prohibiting the use of forfeitures to offset anything other than [certain subset of employer

[5] "Whether the terms of a plan are plain or ambiguous is a question of law." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000).

contributions], . . . [and] has therefore plausibly alleged that the Plan did not authorize the specific decisions made by [Defendants] with respect to the use of forfeited Matching Contributions." ." *Intuit*, *supra*, 2024 WL 3755367 at *6.

Defendants' argument that it complied with Plan terms, Dkt. No. 25, p. 12 of 23, lines 7-9, is meritless. Defendants violated the Plan terms by offsetting forfeitures against Matching Contributions, contrary to the forfeiture provision.

Defendant's attempt to distinguish *Intuit* on the grounds that the Plan documents were "dissimilar," Dkt. 25, p.13 of 23, lines 16-17, is also meritless. The Plan documents in both this case and in *Inuit* limited the Defendants' discretion to use forfeitures to offset employer contributions to a limited category of employer contribution obligations. Both cases provide a plausible interpretation that Defendants' use of forfeitures violated that limitation. Defendants' argument that Plaintiff "seeks an additional benefit not provided under the Plan," Dkt. No.25, p.12 of 23, lines 5-6, likewise fails. Just as in *Intuit*, in this case, plan documents can be interpreted consistent with ERISA as "prohibiting the use of forfeitures to reduce [employer's] matching contributions." *Intuit*, *supra*, 2024 WL 3755367, at *8.[6]

**c. Plaintiff Alleges Damages From Breach Of Fiduciary Duty.**

Plaintiff properly alleges the third element of damages. Under Section 1132(a)(2), the plaintiff "must allege that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010). Here, Plaintiff alleges that Defendants' decision to use forfeitures to offset their matching contributions benefitted Defendants by lowering its contribution expenses by "millions of

---

[6] Defendant's argument Plaintiff did not plead that forfeitures could only "be used to offset certain types of employer contributions," Dkt. 25, p.13 of 23, lines 17-22, lacks merit. Plaintiff generally pled 29 U.S.C. § 1104(a)(1)(D). FAC, ¶38. Moreover, Defendant only provided the complete plan which demonstrated the violation when it filed this motion.

dollars." FAC, ¶ 45. It harmed the Plan by decreasing the amount of employer contributions the Plan otherwise would have received, and depriving the Plan of the money the individual accounts would have earned had the expenses not been deducted from the accounts. FAC, ¶ 19. This is adequate to allege damages. *Intuit*, *supra*, -- F.Supp.3d. --, 2024 WL 3755367 at *7.

Plaintiff properly states a breach of fiduciary duty claim.

**C. Plaintiff Has Properly Pled A Claim For Violation Of ERISA's Anti-Inurement Provision.**

Defendant's use of forfeited Plan assets to offset matching contributions inures to Defendant's benefit, in violation of ERISA's anti-inurement provision.

Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

Here, forfeited funds are Plan assets. Thus, under the Plan terms, "[a]ll assets contributed to the Plan by the Participating Companies shall be held together in a single fund . . ." Dkt. No.25-2, p.86 of 121, § 13.3(b). Employer contributions, which are paid into "the Trust Fund," Dkt. 25-2, p.21 of 121, §2.43, which is the single fund "held by a Trustee . . . under a Trust Agreement" for the plan. *Id*. at p.31 of 121, § 2.116. Thus, forfeited employer contributions are Plan assets. *Intuit* specifically noted that "defendants do not dispute that the forfeitures are plan assets," and stated forfeited funds "remain plan assets." *Intuit*, *supra*, 2024 WL 3755367, at *5, 8. *Qualcomm* stated that forfeited "[n]onvested contributions fall within the functional definition of assets of the pension plan." *Qualcomm*, *supra*, at *6. Defendants also do not dispute that the forfeited contributions are "Plan assets." Dkt. No.25, p.9 of 23, lines 3-4.

Because forfeitures are Plan assets, they cannot be used to "inure to the benefit" of Defendants. Where plan fiduciaries use forfeitures to reduce their "own financial burden to make contributions in the future," courts have held "it is easy to come to the conclusion" a "benefit" inured in their favor. *Qualcomm*, *supra*, 2024 WL 2702207 at *6. By offsetting forfeitures against employer contributions, Defendants' debt obligation was reduced by millions of dollars. FAC, ¶45. An allegation that the employer "received a benefit amounting to 'millions of dollars in contribution expenses'" plausibly states an anti-inurement claim. *Intuit*, *supra*, 2024 WL 3755367, at *8.

The Plan provides that Defendants "shall make" Matching Contributions. Dkt. 25-2, pp.39, 41 of 121, § 4.2(a)(i), 4.3(a). This mandatory language is in contrast to other employer contribution provisions under the Plan, like "Performance-Based Contributions," which the Plan explicitly makes discretionary, providing that Defendants "may, but shall not be required to, make" the contributions. Dkt. 25-2, pp.39, 41 of 121, § 4.4(a)(i). Thus, by the Plan terms, the Matching Contributions are a mandatory debt. Using forfeited assets to offset a debt obligation the employer owes (in the form of matching obligations) is a benefit that inures in favor of Defendants. *Qualcomm*, *supra*, at *6; and *Intuit*, *supra*, at *8 (plaintiff "has plausibly stated a claim for unlawful employer inurement").

Defendants' argument that "forfeitures remained in the plan . . . and used to fund participant benefits," Dkt. No. 25, p. 17 of 23, lines1-2, and were "merely reallocated . . . to offset employer contributions," *id*. at lines 18-19, lacks merit. The test under ERISA's anti-inurement provision is whether Plan assets have been used to "inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). This provision is to be interpreted broadly to implement ERISA's purpose "to protect . . . the interests of participants in employee benefit plans." 29 U.S.C. §1001(b). The

statutory focus is on Plan assets inuring to Defendants' benefits; not on whether assets left the plan or were reallocated within the Plan. Likewise, Defendants' relabeling of its employer contribution debt offset as a "reallocation" has no merit, as it would improperly "elevate form over substance and allow parties to evade" ERISA requirements. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, (2004).

Defendants' assertion that any benefit they received from using forfeitures to offset future contributions "is incidental to the payment of benefits," Dkt. 25, p. 18 of 23, lines 5-8, is unpersuasive. In *Intuit*, the court agreed with the claim that "debt forgiveness" which amounts "to 'millions of dollars in contribution expenses,'" does create "a 'direct and greater-than-incidental benefit'" to the employer. *Intuit*, *supra*, 2024 WL 3755367, at *8. Here too, Plaintiff allegation of millions of dollars in debt forgiveness is a direct, and greater than incidental, benefit. FAC, ¶45.

The cases cited by Defendant are inapposite and do not support its position. In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), the employer used the surplus assets in an overfunded defined benefit plan to fund a new noncontributory benefits structure. *Id*. at 442. The *Hughes* Court emphasized that the employer had not done what defendants did here -- use plan assets to satisfy its debt obligation to the plan. *Id*. (plaintiffs did "not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries"). Indeed, *Inuit* distinguished *Hughes* on the ground that, as in this case, "the plaintiff here *does* allege that the Company used 'assets for a purpose other than to pay its obligations to the Plan's beneficiaries.'" *Intuit*, *supra*, 2024 WL 3755367, at *8 (italics in original). See also *Qualcomm*, *supra*, 2024 WL 2702207 at *4 ("*Hughes* is distinguishable in that it considered a defined benefit plan . . . [not a] defined contribution plan [where] members have a right to contributions"). In *Holliday v. Xerox*, 732 F.2d 548 (6th Cir. 1984), the employer established an additional benefit

program to ensure that employees' annual pension payments were brought up to at least a "minimum pension floor." *Id*. at 549. The annuity payments were not used to forgive the employer's debt, but to calculate the "net increase" in contributions necessary to fund an additional benefit. *Id*. at 551. The remaining cases relied on by Defendant are equally unavailing. *Aldridge v. Lily-Tulip, Inc.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) involved an "underfunded" Plan, *Aldridge*, *supra*, 953 F.2d at n.6, and addressed "whether ERISA requires the sponsor to *add* funds to the plan upon termination." *Id*. at 591. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995) addressed use of surplus funds, and "[t]here [was] no allegation that the assets were used in any way other than to pay benefits to participants and beneficiaries and to pay reasonable administrative expenses." *Maez*, *supra*, 54 F.3d at 1506. *Flanigan v. General Electric*, 242 F.3d 78 (2d Cir. 2001), also involved surplus funds, and there was no claim of misuse of Plan assets for an employer's benefit. Id. at 88 ("all of the pension surplus that GE transferred to Lockheed was used to fund pension benefits"). None of these cases address use forfeited Plan assets to decrease the employer's debt to the Plan.

Plaintiff has properly pled an anti-inurement claim based on Defendants' misuse of forfeited funds.

**D. Plaintiff's Have Properly Pled A Claim For Prohibited Transactions Under ERISA.**

Plaintiff has properly stated a claim for prohibited transactions under ERISA Sections 1106(a)(1) and 1106(b).

29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of party in interest, of

any assets of the plan."

Plaintiff's claim that Defendants exchanged forfeited Plan assets, for future employer contributions, states a claim for violation of Section 1106(a)(1). *Intuit*, *supra*, 2024 WL 3755367, at *10 (the "reallocation of undisputed plan assets to reduce its own matching contribution . . . was a 'use' of plan asserts for the purposes of § 1106(a)); and *Qualcomm*, *supra*, 2024 WL 2702207 at *6 (the § 1106(a) claim is supported by "the plain meaning of the statutory language").

In addition, 29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account." Plaintiff's allegations that Defendant's used forfeited plan assets to offset Defendants' employer contribution debt states a claim under Section 1106(b)(1). *Intuit*, *supra*, 2024 WL 3755367, at *10 (reallocation of forfeited Plan assets to offset employer contributions is "'dealing with' plan assets for the purposes of § 1106(b)(1)"); and *Qualcomm*, *supra*, 2024 WL 2702207 at *6.

Defendants' argument that using forfeitures to offset employer contributions "is not the type of 'transaction'" governed by ERISA's prohibited transactions rules, Dkt. 25, p.20 of 23, lines 8-9, was rejected in *Intuit*. "[T]he alleged 'transaction' is Intuit's reallocation of undisputed plan assets to reduce its own matching contribution." *Intuit*, *supra*, 2024 WL 3755367, at *10. *Qualcomm* also held that it was adequate to allege "an 'exchange' or transaction of existing Plan assets for future employer contributions." *Qualcomm*, *supra*, 2024 WL 2702207 at *5.

Defendant's citation to *Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997), in unpersuasive. In *Spink*, the employer amended a defined benefit plan to offer new "increased retirement benefits" that "were paid out of the Plan's surplus assets." *Id*. at 1260. There was no contention that the employer had used plan assets to forgive its debts to the plan. *Intuit* distinguished *Spink* because, in *Spink*, "the

alleged benefit to the employer was distinct and unrelated to any financial risk to the plan itself," whereas in the forfeiture misuse cases plaintiffs have alleged that offsetting employer contributions reduces funds available for distribution or investment. *Intuit*, *supra*, 2024 WL 3755367, at *10.[7] Plaintiff likewise alleges that Defendant's misconduct caused harm by "reducing Plan assets." FAC, ¶19.

Defendants also cite to *Black v. Greater Bay Bancorp*, 2017 WL 8948732 (N.D. Cal. 2017), Dkt. 25, p.20 of 23, lines 18-19, but that case involved "a claim for benefits recast in another form," and has no relevance here. *Id*. at *8. Likewise *Chao v. Hagemeyer N.Am., Inc.*, 2006 WL 8443663 (D.S.C. 2006), related to the "merger or spinoff of an ERISA-governed plan," where the transactions at issue did not involve any self-dealing, but were "either reallocations between accounts of plan participants or distribution of benefits to plan participants." *Id*. at *6. Neither case involved a self-dealing transaction that benefitted the employer.

Pursuant to 29 U.S.C. § 1109(a), Defendants are liable for the Plan losses resulting from the prohibited transactions.

**E. Defendants' Reliance On Treasury Regulations Is Meritless.**

Defendants' citation to Treasury Regulation 26 C.F.R. § 1.401-7(a), Dkt. No. 25, p.14 of 23, lines 11-17, has no merit. Section 1407-7(a) does not apply to Kaisers' defined contribution plan.

To understand why the IRS regulation, Section 1407-7(a), does not apply, "it is essential to recognize the difference between defined contribution plans and defined benefit plans." *Hughes*, *supra*, 525 U.S. at 439. "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with

[7] *Qualcomm* also distinguished *Spink* because *Spink* was about "paying out of plan benefits," not offsetting future employer contributions. *Qualcomm*, *supra*, 2024 WL 2702207 at *5.

the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). By contrast, in a "defined contribution plan," the "employer's contribution is fixed and," at retirement, "the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Hughes*, *supra*, 525 U.S. at 439.

The Kaiser Plan is "a profit-sharing plan," which is a type of "defined contribution plan." *See* FAC, ¶6; *see also* Dkt. 25-2, p.16 of 121, § 2.29. Section 1401-7(a) – and the Code provision it construes, 26 U.S.C. § 401(a)(8) – have never applied to profit sharing defined contribution plans, like the Kaiser Plan.

Section 401(a) of the Internal Revenue Code sets forth the requirements for three types of plans, "stock bonus, pension, or profit-sharing plan," to be a tax exempt "qualified trust." 26 U.S.C. § 401(a)(8) (emphasis added). When initially enacted in 1954, section 401(a) did not address the use of forfeitures in any of these three types of plans. In 1962, the statute was amended to add subdivision (a)(8). *See* Pub. L. No. 87-792, 76 Stat. 809, 810 (1962). The new provision provided that "[a] trust forming part of a pension plan shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan." 26 U.S.C. § 401(a)(8) (1962) (emphasis added). The statute remained silent – and to this day is still silent – regarding the use of forfeitures in a "profit sharing plan."

In 1963, the IRS promulgated 26 C.F.R. § 1.401-7 to construe the 1962 amendment adding subdivision (a)(8) to Code section 401. *See* 28 Fed. Reg. 10115 (1963). As with the statutory provision it construes, that regulation does not purport to apply to a "profit-sharing plan." Instead, it is expressly limited to a "pension plan." *See* 26 C.F.R. § 1.401-7(a). The IRS regulations state that "[a] pension plan within the meaning of section 401(a)" – and as used in regulation § 1.401-7 – is a

plan that provides for "the payment of definitely determinable benefits" (i.e., a defined benefit plan). 26 C.F.R. § 1.401-1(b)(1)(i) (emphasis added). A "profit-sharing plan," by contrast, is a plan that provides for "a definite predetermined formula for allocating the contributions to the plan" (i.e., a defined contribution plan). 26 C.F.R. § 1.401-1(b)(1)(ii) (emphasis added). It has always been clear that the requirements of "[s]ection 401(a)(8) of the Code and section 1.401-7 of the Income Tax Regulations" do "not extend to profit-sharing … plans." Rev. Rul. 71-313, 1971 WL 26693 (1971).

In addition, with the passage of ERISA, the Code was amended to include a definition of "defined contribution plan" that expressly contemplates that "forfeitures of accounts of other participants … may be allocated to such participant's account." Pub. L. No. 93-406, 88 Stat. 829 at § 1015 (1974); 26 U.S.C. § 414(i). This provision would be irreconcilable with section 401(a)(8)'s ban on reallocating forfeitures to other participants' accounts if that provision applied to a "defined contribution plan." Confirming that section 401(a)(8) has no application to defined contribution plans, the statute was amended in 1986 to replace the term "pension plan" with the term "defined benefit plan." See Pub. L. No. 99-514, 100 Stat. 2085 at § 1119(a) (1986).

Moreover, the regulation was also rendered defunct by the passage of ERISA. This is because "ERISA added section 412 to the Code, which requires qualified defined benefit plans … to satisfy a minimum funding standard" and the Code "provisions that set forth minimum funding requirements" – 26 U.S.C. §§ 412, 430 431, and 433 – "do not allow the use of forfeitures to reduce required employer contributions to a defined benefit plan." 88 Fed. Reg. 12282, 12284 (2023). For that reason, the IRS clarified that § 1.401-7(a), among other regulations, to "reflect the provisions of" the Code "prior to amendment by" ERISA.

26 C.F.R. § 1.401-0 (emphasis added); 42 Fed. Reg. 42320 (1977).

Multiple courts have rejected Defendant's contention that the Treasury regulations provide a defense to using forfeited Plan assets for the employer's benefit, finding the "arguments lack merit." *Intuit*, *supra*, 2024 WL 3755367, at *8; *see also Hutchins v. HP, Inc.*, -- F.Supp.3d. --, 2024 WL 3049456, *4 (N.D.Cal. 2024) ("Plaintiff is correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan").

**F. Defendant's Reliance On Proposed IRS Regulations Is Meritless.**

Defendants also cite to the Internal Revenue Service's "proposed" regulation, 88 Fed. Reg. 12282 (2023). Dkt. No. 25, p.14 of 23, lines 19-27. This similarly lacks merit. *Qualcomm*, *supra*, 2024 WL 2702207 at *7 ("the rule has not been adopted and has no force of law").

Last year the IRS published a proposed regulation that, if promulgated, would for the first time regulate the use of forfeitures in defined contribution plans for the purpose of determining whether a plan is tax qualified. See 88 Fed. Reg. 12282 (2023). It would permit a defined contribution plan to remain qualified for favorable tax treatment where "forfeitures are used for one or more of the following purposes: (i) To pay plan administrative expenses; (ii) To reduce employer contributions under the plan; or (iii) To increase benefits in other participants' accounts in accordance with plan terms." 88 Fed. Reg. 12282, 12285 (2023). This proposed regulation is of no consequence here for multiple reasons.

First, a proposed regulation could not impact the construction of ERISA pursuant to 29 U.S.C. § 1144(d) – providing that ERISA shall not be "construed to alter, amend, modify, invalidate, impair or supersede . . . any rule or regulation" – because it is not a "rule or regulation." *See Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000) ("[P]roposed regulations carry no more weight than a position advanced on brief"); *Estate of Howard v. Comm'r*, 910 F.2d 633, 636 (9th Cir.

1990) ("Proposed regulations do not have the force of law").

Second, even if the proposed regulation were to eventually become a "rule or regulation," it would only apply to plan years beginning on or after January 1, 2024. See 88 Fed. Reg. 12282, at 12285. Thus, it would have no application to Kaiser's use of forfeitures up until then.

Third, even if the proposed regulation were applicable here, it would not require that forfeitures be used to reduce employer contributions rather than pay administrative expenses or increase benefits. Rather, the proposed regulation lists all such options for forfeitures as permissible uses. A such, complying with ERISA by using the forfeitures, as Plaintiff contends they should be used, solely to defray plan expenses or increase benefits, would not conflict with the proposed regulation.

Finally, the mere fact that compliance with ERISA's statutory mandates may preclude one of several otherwise permissible options for using forfeitures does not mean that it would "modify, impair or supersede" the proposed IRS regulation. *See Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990). Regardless of whether compliance with ERISA prohibits using forfeitures to reduce employer contributions, the IRS would remain free to separately decide whether such use qualifies a plan for favorable tax treatment. *Cf. In re McIntyre*, 222 F.3d 655, 660 (9th Cir. 2000) (holding that ERISA "cannot prevent the IRS from undertaking what would otherwise be a valid exercise of its . . . authority").

### G. The More Persuasive Case Law Addressing Use Of Forfeitures Supports Plaintiff's Claim.

Defendant's contention that *Qualcomm* and *Intuit* should not be followed, in favor of *HP*, Dkt. 25, pp.13-14 of 23, lacks merit. *Qualcomm* and *Intuit* are more well-reasoned and persuasive than *HP*. Moreover, Plaintiff's claims are properly pled even under *HP*.

Thus, as to the breach of fiduciary duty claim, *HP* states "ERISA does not mandate what benefits the employer must provide. . . [and plaintiff is] arguing that the fiduciary duties . . . create a benefit: the payment of his administrative costs." *HP*, *supra*, 2024 WL 3049456 at *6. However, *HP* fails to reconcile this analysis with: (i) the fact that the Plan terms provide that payment of administrative costs is an option for Plan fiduciaries' use of forfeited funds, and (ii) ERISA requires plan fiduciaries to act "for the exclusive purpose of . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). The better analysis is not that a benefit is being created that did not exist under the Plan terms, as *HP* concluded, but that Plan terms which provide a discretionary choice should be interpreted consistent with ERISA's fiduciary mandates, as *Qualcomm* and *Intuit* concluded.

With respect to the anti-inurement claim, *HP* rejects the contention that employers' "future obligation to provide matching benefits [is analogous] to a debt," and holds the offset was an incidental benefit because "plaintiff has not alleged HP owes any outstanding or unpaid amounts." *HP*, *supra*, 2024 WL 3049456 at *9. However, *HP*'s distinction between a future and outstanding debt obligation has no basis in the statutory text of ERISA's anti-inurement provision, which focuses exclusively on whether a benefit inured. The better analysis is in *Qualcomm* and *Intuit*, that offsetting contribution obligations is a benefit that inures to the employer.

Finally, as to the prohibited transaction claims, *HP* concludes that the forfeited funds were "merely reallocated," and states this is not a prohibited transaction under 29 U.S.C. § 1106(a)(1). But this analysis fails to grapple with the fact that, as stated in *Intuit*, Defendant's "reallocation of plan assets 'reduced the funds available to participants for distribution and/or investing,' a direct threat to the Plan itself." *Intuit*, *supra*, 2024 WL 3755367, at *10. Moreover, *HP* fails to persuasively address how Defendants' use of forfeited Plan assets to offset future

employer contributions can be consistent with 29 U.S.C. § 1106(b)(1)'s prohibition on a fiduciary "deal[ing] with the assets of the plan in his own interest or for his own account." The more persuasive analysis is the conclusion that reallocation of forfeited Plan assets to offset employer contributions is "'dealing with' plan assets for the purposes of § 1106(b)(1)." *Intuit*, *supra*, 2024 WL 3755367, at *10; *see also Qualcomm*, *supra*, 2024 WL 2702207 at *6.

*Qualcomm* and *Inuit* should be followed over *HP*.

Moreover, and alternatively, even if *HP* were to be followed, the allegations here differ materially and require denial of Defendants' motion. That is because the Plan terms at issue explicitly does not allow what Defendants did in this case – offset forfeitures against future Matching Contributions. Dkt. 25-2, p. 51 of 121, § 6.5. Thus, this case is unlike *HP*, where the plaintiff presented a theory that was "not limited to any particular circumstances that may be present in this case." *Id*. at *6. The Plan language limiting Defendants' discretionary authority to offset forfeitures against employer contributions, to the exclusion of Matching Contributions, is unique to this case, and renders *HP* inapplicable, even if the Court was inclined to follow it.

**IV. If The Court Is Inclined To Grant This Motion, Plaintiff Requests Leave To Amend.**

With respect to any claim for which the motion to dismiss is granted, Plaintiff respectfully requests leave to amend in order to cure any defects. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires." This includes, to the extent needed, to clarify a claim that Defendants violated their fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) by violating plan terms in offsetting

forfeitures against Matching Contributions, despite the lack of discretion to do so in the forfeiture clause.

## V. Conclusion.

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny this motion.

Dated: October 18, 2024

Respectfully submitted,

/s/ Joshua Haffner
Joshua H. Haffner
Alfredo Torrijos
Vahan Mikayelyan
HAFFNER LAW PC
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Tel: (213) 514-5681
Fax: (213) 514-5682
E-mail: jhh@haffnerlawyers.com
E-Mail : at@haffnerlawyers.com
E-Mail :vh@haffnerlawyers.com

Counsel for Plaintiff and the Proposed Class

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff John Shulak certifies that this brief contains 6761 words, which complies with the word limit of L.R. 11-6.1.

Executed on October 18, 2024.

By: /s/ Joshua H. Haffner
Joshua H. Haffner

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 18, 2024.

By: /s/ Joshua H. Haffner
Joshua H. Haffner